

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ROBERT L. ROSS, JR.,

      Plaintiff,

vs.

WORLD CHAMPIONSHIP WRESTLING, INC.,

      Defendant.

CIVIL NO. 1:93-CV-1206-JEC

## ORDER

The above entitled action is presently before the Court on the Magistrate Judge's Report and Recommendation [15] granting defendant's Motion For Summary Judgment [11] and denying as moot plaintiff's Motion to Extend Time To April 25, 1994 To Respond To Defendant's Motion For Summary Judgment [12]. Plaintiff has filed no objection(s) to the Magistrate Judge's Report and Recommendation. The Court has reviewed the record and arguments of the parties and concludes that the Magistrate Judge's Report and Recommendation should be received with approval and adopted as the opinion and order of the Court.

ACCORDINGLY, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [15] **GRANTING** defendant's Motion For Summary Judgment [11] and **DENYING AS MOOT** plaintiff's Extension Of Time [12].

SO ORDERED, this 19 day of October, 1994.


Julie E. Carnes

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

ENTERED ON DOCKET

OCT 21 1994

U.S.T. CLERK

DEPUTY CLERK

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT ROSS, JR.,                      :    CIVIL ACTION

     Plaintiff,                         :    NO. 1:93-CV-1206-JEC

     vs.                                :    *Adopted by Judge Carnes via order dated 10-19-94*

WORLD CHAMPIONSHIP WRESTLING, INC.,    :

     Defendant.                         :

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 260-2. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no

1

objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. <u>United States v. Slay</u>, 714 F.2d 1093 (11th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

IT IS SO ORDERED, this ___17th___ day of May, 1994.


WILLIAM L. HARPER
UNITED STATES MAGISTRATE JUDGE

2

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MAY 1 7 1994

LUTHER D. THOMAS, Clerk

By: _____
        Deputy Clerk

ROBERT ROSS, JR.,                    :    CIVIL ACTION

    Plaintiff,                       :    NO. 1:93-CV-1206-JEC

       vs.                           :

WORLD CHAMPIONSHIP WRESTLING, INC., :

    Defendant.                       :


## MAGISTRATE JUDGE'S ORDER, REPORT AND RECOMMENDATION


The above-styled employment discrimination action is presently before the undersigned Magistrate Judge for consideration of defendant's motion for summary judgment. For the reasons set forth below, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED.


Defendant filed its motion for summary judgment on March 25, 1994. (Docket No. 11). In a letter dated March 30, 1994, the Clerk of Court notified plaintiff of the filing of defendant's summary judgment motion, of his duty to respond, and of the possible consequences of a failure to respond. On April 14, 1994, plaintiff filed a motion for an extension of time within which to respond to defendant's motion, seeking an extension through and including April 25, 1994. (Docket No. 12). Without the benefit of a ruling on this motion,

plaintiff filed an untimely response to defendant's motion for summary judgment on April 26, 1994. (Docket No. 13). Defendant has subsequently filed a reply brief. (Docket No. 14).

As plaintiff's response was not filed until April 26, 1994, this response would be untimely even if the court were to grant plaintiff's motion for an extension of time. Accordingly, plaintiff's motion for an extension of time is hereby DENIED as moot.

Local Rule 220-1(b)(1) provides in relevant part that "[f]ailure to file a response [to a motion] shall indicate that there is no opposition to the motion." Accordingly, as no timely response was filed to defendant's motion for summary judgment, the undersigned Magistrate Judge deems this motion to be unopposed.

The applicability of Local Rule 220-1(b)(1) in the specific context of a motion for summary judgment was considered by the Eleventh Circuit Court of Appeals in Dunlap v. Transamerica Occidental Life Insurance, 858 F.2d 629 (11th Cir. 1988). In upholding the District Court's grant of summary judgment in favor of defendant, the court noted:

2

In <u>Simon v. Kroger Company</u>, 743 F.2d 1544 (11th Cir. 1984) this court upheld the entry of summary judgment under similar circumstances. The result in <u>Simon</u> was based upon both a finding that the summary judgment motion was well supported and a finding that a local rule in the Northern District of Georgia--which apparently was the predecessor to one of these local rules--was properly applied.

Had the district court based its entry of summary judgment solely on Local Rule 220-1(b), a different question would be presented. Local Rule 220-1(b)(1) might well be inconsistent with Fed.R.Civ.P. 56 if it were construed to mean that summary judgment could be granted as a sanction for failure to respond to a motion for summary judgment. <u>Cf. Arundar v. DeKalb Cty. School Dist.</u>, 620 F.2d 493 (5th Cir. 1980). In this case, however, Transamerica's motion was supported by evidentiary materials of record, and the district court's orders indicate that the merits of the motion were addressed.

<u>Dunlap</u>, 858 F.2d at 632. <u>See also, Kinder v. Carson</u>, 127 F.R.D. 543, 545 (S.D. Fla. 1989).

The proper approach, therefore, given the applicability of Local Rule 220-1(b)(1) to the present case is succinctly stated by the court in <u>Kelly v. United States</u>, 924 F.2d 355, 358 (1st Cir. 1991):

3

In the precincts patrolled by Rule 56, the
decision to sit idly by and allow the summary
judgment proponent to configure the record is
likely to prove fraught with consequence. This
case is no exception. Given appellant's failure to
contest either the government's affidavits or the
Statement, the jurisprudence of both Rule 56 and
Local Rule 18 demands that the movant's version of
the facts be taken as true.

Of course, the district court was still
obliged to consider the motion on its merits, in
light of the record as constituted, in order to
determine whether judgment would be legally
appropriate. See Mendez v. Banco Popular, 900 F.2d
4, 7 (1st Cir. 1990); Jaroma v. Massey, 873 F.2d
17, 19-20 (1st Cir. 1989) (per curiam); see
generally Amsden, 904 F.2d at 753 (court of appeals
may reverse a grant of summary judgment, regardless
of uncontroverted nature of facts, if "the district
court erred in expounding the law").

See also, Anchorage Associates v. Virgin Islands Board of Tax
Review, 922 F.2d 168 (3rd. Cir. 1990); Mendez v. Banco Popular
de Puerto Rico, 900 F.2d 4, 7-8 (1st. Cir. 1990).

Additionally, the procedural deficiency of plaintiff's
response likewise compels this court to accept defendant's
statement of material facts not in dispute as true for
purposes of ruling on the merits of defendant's motion for

4

summary judgment.  Local Rule 220-5(b)(2) of the Local Rules
of Practice for the United States District Court for the
Northern District of Georgia provides:

> The respondent to a motion for summary judgment
> shall attach to his response a separate and concise
> statement of material facts, numbered separately,
> to which he contends there exists a genuine issue
> to be tried.  Response should be made to each of
> the movant's numbered material facts.  All material
> facts contained in the moving party's statement
> which are not specifically controverted by the
> respondent in his statement shall be deemed to have
> been admitted.  The response that a party has
> insufficient knowledge to admit or deny is not an
> acceptable response unless the party has complied
> with the provisions of F.R.Civ.P. 56(f).

Plaintiff's response to defendant's motion for summary
judgment is not in compliance with Local Rule 220-5(b)(2).
Accordingly, and based upon the untimely nature of this
response, the undersigned Magistrate Judge adopts defendant's
statement of material facts not in dispute for purposes of
resolving the merits of defendant's motion for summary
judgment.  These facts are briefly summarized below.

Following plaintiff's honorable discharge from military
service, he embarked on a career in professional wrestling.

5

Plaintiff adopted the ring name of "Ranger Ross," and adopted the persona of a decorated war hero.

After some time wrestling in smaller alliances and federations, plaintiff contacted David Crockett, the owner of the National Wrestling Alliance (NWA), regarding the possibility of wrestling within the NWA. At Crockett's urging, plaintiff attended a wrestling school in North Carolina operated by Nelson Royal. Based upon his observations, Royal notified Crockett that plaintiff was qualified to wrestle for the NWA.[1]

In 1988, the NWA was purchased by World Championship Wrestling, Inc. (WCW). In January 1989, plaintiff began to wrestles for WCW. Plaintiff retained the ring name of "Ranger Ross," and continued to use his assumed persona or gimmick. As was true in plaintiff's earlier professional wrestling experiences, plaintiff was required to provide his own equipment and costume at plaintiff's cost.

In this his first tour of duty with WCW, plaintiff received $1,000.00 per week plus an occasional percentage of

---

[1] Plaintiff had previously attended a wrestling school in Atlanta, Georgia, conducted by a popular former professional wrestler, Thunderbolt Paterson.

6

the gate at his matches.  Plaintiff wrestled approximately 15 to 20 days per month.

In May 1990, plaintiff was released due to budgetary restraints on the part of WCW.  After his first WCW stint ended, plaintiff wrestled briefly in Japan.  In January 1991, plaintiff was contacted by WCW President Jim Herd.  After discussing the matter with Herd, plaintiff agreed to sign a form entitled "WCW Freelance Wrestler/Independent Contractor Agreement."  Plaintiff read and fully understood this document before signing.  This document provided that plaintiff would be engaged as an independent contractor rather than an employee, and would not enjoy any of the benefits afforded to WCW employees.  Furthermore, the document provided that plaintiff, rather than WCW, would be responsible for the payment of taxes on plaintiff's income pursuant to the agreement.  Plaintiff was to be paid $1,500.00 per week according to this agreement.

During the course of his relationship with WCW, plaintiff's primary contact was WCW Consultant Virgil Runnels (a/k/a Dusty Rhodes).  In his position as WCW Consultant, Runnels was responsible for booking and scheduling wrestling events, for evaluating and recruiting wrestling talent, for pre-determining the final outcome of each wrestling match, and

7

determining which wrestler or wrestlers to "push" into the position of heavyweight champion.

Plaintiff's performance of his work as a professional wrestler can be briefly summarized in the following manner. Plaintiff would receive a booking sheet from Runnels announcing the wrestling match's location and date approximately two weeks to 30 days in advance of the scheduled match.  Plaintiff was responsible for travel to the wrestling match site, and was responsible for bearing the cost of such travel.  On the date of a match, wrestlers would arrive at the venue, change into their wrestling costumes, and await further instructions.   The participants were then informed which wrestler would win each match, and what the finishing move or technique for accomplishing the "victory" would be.   The wrestlers were free to choreograph the remainder of the wrestling match on their own.   Plaintiff and the other professional wrestlers received little if any other supervision in the performance of their duties.

During the spring and summer of 1991, professional wrestling suffered a decline in popularity.  Based upon declining profits, WCW decided not to renew several wrestler's independent contractor agreements.  Runnels suggested which wrestlers should be allowed to leave based primarily upon

8

their popularity and drawing power. Rhodes then suggested which wrestlers to include to WCW President Herd. Rhodes specifically found that plaintiff lacked the charisma and ability to generate significant fan interest or profit for WCW. Accordingly, Runnels included plaintiff's name on the list of recommended non-renewals. Runnels suggestions were accepted by Herd, and plaintiff's contract or agreement expired in July 1991.

In all, 14 wrestlers' independent contractor agreements were not renewed during the summer of 1991. Plaintiff was the only African American included within this list. At the time of his discharge, plaintiff received compensation at a higher rate than 10 of the other wrestlers whose contracts were allowed to expire.

During the period of plaintiff's association with WCW, defendant employed approximately 334 male wrestlers. The vast majority (approximately 300) of these male wrestlers were white. Plaintiff's rate of compensation was higher than approximately 278 of these other professional wrestlers.

Plaintiff was not "pushed" into the position of heavyweight champion by Runnels and other WCW agents based upon their determination that he lacked the charisma and

ability to generate widespread interest in his matches. It was plaintiff's deficiency in these areas which primarily separated him from three individuals who were allowed to claim the title of heavyweight champion during approximately the same time period. Of these three individuals, two (Rick Flair and Lex Lugar) were white, while the remaining individual (Ron Simmons) was black.

Runnels actually enlisted plaintiff's aid in pushing Simmons into the position of heavyweight champion. Plaintiff was portrayed as conditioning Simmons through military training thereby preparing him for an "assault" on the heavyweight championship.

After exhausting his administrative remedies, plaintiff filed his complaint in the above-styled employment discrimination action on June 1, 1993. (Docket No. 1). Plaintiff's complaint was premised solely upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, _et seq._ (Docket No. 1, ¶ 1) (_See also_, Plaintiff's Answer to Mandatory Interrogatories, Docket No. 2, ¶ 2, which identifies Title VII, albeit incorrectly, as 28 U.S.C. § 2000, _et seq._). Within the framework of Title VII, plaintiff leveled the following charges against defendant:

10

a) Created a "glass ceiling" for non-white employees and independent contractors on hiring and promotional policies to positions of World Championship Wrestler;

b) Created a practice and/or unwritten policy of putting non-white employees and independent contractors into the role of subsidiary employment or other position, and without concomitant salary, commission, bonus and title advances;

c) Promoted white employees and independent contractors on a regular basis to higher titles, salaries, commissions and bonuses over non-white employees and independent contractors of longer employment with Defendant, higher performance achievements, better personal skills and management abilities;

d) Denied non-white employees interview (and thus promotion) opportunities on a regular basis; and

e) Replaced non-white employees with equal to or less qualified whites when a white employee for the position could be located and installed.

(Docket No. 1, ¶ 6).

11

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987). On summary judgment, the parties must satisfy the following burdens of proof:

> The party moving for summary judgment bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

12

Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89
L.Ed.2d 538 (1986).

Once the moving party meets this initial burden,
summary judgment is then appropriate as a matter of
law against the nonmoving party "who fails to make
a showing sufficient to establish the existence of
an element essential to that party's case, and on
which that party will bear the burden of proof at
trial." Celotex, 477 U.S. at 322, 106 S.Ct. at
2552.    In  making  a  sufficient  showing,  the
nonmoving party must "go beyond the pleadings and
by ... affidavits, or by the 'depositions, answers
to  interrogatories,  and  admissions  on  file,'
designate 'specific facts showing that there is a
genuine issue for trial.'" Id. at 324, 106 S.Ct.
at 2553 (quoting Fed. R. Civ. P. 56(e).    In
opposing summary judgment, the nonmoving party may
avail  itself  of  all  facts  and  justifiable
inferences in the record taken as a whole.   See
United States v. Diebold, Inc., 369 U.S. 654, 655,
82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).    In
reviewing whether the nonmoving party has met its
burden, the court must stop short of weighing the
evidence and making credibility determinations of
the truth of the matter.   Anderson, 477 U.S. at
255, 106 S.Ct. at 2513.   Instead, "[t]he evidence
of the non-movant is to be believed, and all
justifiable inferences are to be drawn in his
favor." Id. (citing Adickes v. S.H. Kress & Co.,
398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26
L.Ed.2d 142 (1970).   If, so viewed, a rational
trier of fact could find a verdict for the

13

nonmoving party under the substantive evidential standard, the nonmoving party can defeat summary judgment. Id. 477 U.S. at 252, 106 S.Ct. at 2512.

Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-9 (11th Cir. 1992).

In order to fall within the statutory jurisdiction of Title VII, alleged discriminatory conduct must take place within the employer/employee relationship. Specifically, an aggrieved individual may only proceed under Title VII where that individual is an employee rather than an independent contractor. See, e.g., Wilde v. County of Kandiyohi, 15 F.3d 103, 104 (8th Cir. 1994); Cobb v. Sun Papers, Inc., 673 F.2d 337 (11th Cir. 1982), cert. denied, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982).

In order to determine whether a particular individual is an employee or an independent contractor, courts are to employ common law principles of agency. See, Cobb, 673 F.2d at 341. See also, Nationwide Mutual Insurance Co. v. Darden, 503 U.S. ____, 112 S.Ct. 1344, 117 L.Ed.2d 581, 588-90 (1992). Among the factors to be considered in making this determination are the following: the hiring party's right to control, the level of skill required, the source of equipment and tools, the location of the work, the duration of the relationship between

14

the parties, the right to assign additional work, the method of payment, whether the work in question is an essential part of the hiring party's business in general, the provision of employee benefits, the tax status of the parties, and the intent of the parties. <u>Darden</u>, 117 L.Ed.2d at 589-90 (<u>citing</u>, <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 751-52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). The application of these factors to the undisputed facts in the present case creates a somewhat "mixed" result. <u>See</u>, <u>Cobb</u>, <u>supra</u>. After carefully weighing these factors, as discussed below, however, the undersigned Magistrate Judge finds that plaintiff was an independent contractor, and that his complaints of alleged discrimination therefore fall outside of the statutory jurisdiction of Title VII.

As to the level of defendant's control over the means and manner of plaintiff's performance, the undisputed facts establish that this control was minimal. Plaintiff was allowed to create his own wrestling persona or gimmick. Furthermore, while the nature of the ending of each match was determined by defendant, plaintiff and his opponent were largely free to choreograph the bulk of the action. The balance struck between control and independence of action in this case is thus completely compatible with a finding that plaintiff was an independent contractor rather than an

15

employee.  See, e.g., North American Van Lines, Inc. v. NLRB, 869 F.2d 596, 599 (D.C. Cir. 1989).

As to the issue of the skill level required in plaintiff's performance of his duties, plaintiff has testified regarding the fact that he attended two separate professional wrestling schools in order to receive training.  Furthermore, plaintiff admitted that an individual lacking in such training would not be qualified to perform as a professional wrestler. Furthermore, plaintiff stated that defendant required him to be evaluated at the second of these wrestling schools in order to determine whether or not he was qualified for the position. Accordingly, this factor also weighs in favor of a finding that plaintiff was an independent contractor.

Plaintiff admits that with the exception of a rope on one occasion and perhaps one pair of boots, he was solely responsible for the provision of his equipment and costumes at his own expense.  Therefore, this factor weighs in favor of a finding that plaintiff was an independent contractor.

As to the location of plaintiff's work, it is undisputed that defendant informed plaintiff of the location of his various matches.  As defendant controlled the location of

16

plaintiff's work, this factor would tend to weigh against a finding that plaintiff was an independent contractor.

In this case, it is undisputed that plaintiff and defendant's relationship was specifically contracted for a period of six months. This specified period of time for a short duration is consistent with a finding that plaintiff was an independent contractor.

It would not appear that plaintiff had the right or ability to assign his performance to other individuals or assistants. Accordingly, this factor weighs against a finding that plaintiff was an independent contractor rather than an employee. Likewise, the fact that plaintiff was paid a salary, rather than a commission, for the vast majority of his work also tends to weigh against a finding that plaintiff was an independent contractor.

As defendant's sole business is the promotion and performance of professional wrestling matches for profit, the work performed by plaintiff and his fellow grapplers is, of course, essential to defendant's business. The undersigned notes defendant's argument, however, that professional wrestlers often move between federations and alliances and are, in one certain sense, a "fungible good." The undersigned

finds ultimately with regard to this factor that it does not weigh heavily toward the conclusion that plaintiff was an independent contractor nor does it suggest that plaintiff was an employee.

The undisputed evidence establishes that plaintiff did not receive any fringe benefits with regard to his relationship with defendant. Furthermore, the agreement entered into between plaintiff and defendant expressly states that plaintiff is not eligible for any benefits provided to defendant's employees. Similarly, plaintiff was responsible for the payment of taxes on money received pursuant to the agreement. Accordingly, the undersigned finds that this factor weighs heavily in favor of a finding that plaintiff was in fact an independent contractor.

Finally, the undersigned considers the question of the party's intent. In the present case, the undisputed evidence inevitably points to the conclusion that both defendant and plaintiff intended to form an independent contractor relationship, and that each party considered the resulting relationship to be, in fact, an independent contractor relationship. Accordingly, the undersigned finds that this factor also weighs heavily in favor of a finding that plaintiff was an independent contractor.

18

As noted above, the application of this common law test to the facts in the present case generates mixed results. Without giving dispositive weight to any particular factor, the undersigned notes that generally the intent of the parties and the level of control over the performance of the individual's work are considered persuasive factors. Based upon the facts of this case, both of these factors point to a finding that plaintiff was an independent contractor. Additionally, the undersigned finds that the balancing of the remaining elements of this test also indicate that plaintiff was an independent contractor.

Accordingly, the undersigned Magistrate Judge finds that plaintiff's relationship with defendant was that of an independent contractor, and that his claims of discriminatory treatment therefore fall outside of the jurisdictional scope of Title VII. Therefore, defendant is entitled to summary judgment in its favor based solely upon this ground.

The undersigned notes, however, that alternative grounds clearly exist in support of this outcome. Specifically, the undersigned finds that plaintiff has failed to meet his burden of producing some evidence which raises a material question of fact as to discriminatory intent on the part of defendant.

19

The basic standards for evaluating a motion for summary judgment have been set forth above.  Other standards specific to claims of discrimination under Title VII are essential to an evaluation of defendant's motion on its merits.

It should be noted that conclusory allegations based on mere subjective beliefs do not create a genuine issue of material fact.  Carter v. Miami, 870 F.2d 578, 585 (11th Cir. 1989); Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983).  See also, Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (collecting cases).  Specifically, in regards to plaintiff's claim under Title VII of the Civil Rights Act of 1964, it is well established that a Title VII plaintiff opposing a motion for summary judgment must present significantly probative evidence on the issue of discrimination to avoid summary judgment.  Young v. General Foods Corp., 840 F.2d 825 (11th Cir. 1988), cert. denied, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); Grigsby v. Reynolds Metals Co., 821 F.2d 590 (11th Cir. 1987).  Reliance solely upon speculation and unsubstantiated hearsay constitutes a failure to meet this burden.  See, e.g., Palucki v. Sears, Roebuck and Co., 879 F.2d 1568 (7th Cir. 1989) ("a party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture"); Benson v. Vermont American Corp., 723 F.Supp. 1439 (M.D. Ala. 1988)

20

("inadmissible evidence offered in the form of a deposition, cannot be considered by the court"), aff'd without opinion, 874 F.2d 820 (11th Cir. 1989); Williams v. Housing Authority, 709 F.Supp. 1554 (M.D. Fla. 1988) ("the court cannot base direct-evidence analysis on hearsay testimony by plaintiff"), aff'd without opinion, 872 F.2d 434 (11th Cir. 1989).

A Title VII plaintiff may demonstrate discriminatory intent through either direct or indirect evidence. Direct evidence consists of the actions or remarks of an employer reflecting a discriminatory attitude. Wall v. Trust Company of Georgia, 946 F.2d 805, 809-10 (11th Cir. 1991); Hill v. Metropolitan Atlanta Rapid Transit Authority, 841 F.2d 1533, 1539 (11th Cir. 1988), modified, 848 F.2d 1522 (11th Cir. 1988). See also, Bell v. Birmingham Linen Service, 715 F.2d 1552, 1556 (11th Cir. 1983), cert. denied, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). Indirect evidence may be demonstrated through the framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). For example, an individual may produce indirect evidence of a discriminatory failure to hire by establishing that he is a member of a protected group and that he "applied for an available position for which [he]

21

was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." _Burdine_, 450 U.S. at 253.   This framework, however, is flexible, and can be shaped to fit employment practices other than failure to hire.

If a plaintiff presents direct evidence of discrimination, the burden of proof shifts to defendant to establish that it would have reached the identical employment decision absent unlawful considerations. _See_, _Wall_, 946 F.2d at 810 (_citing_, _Price Waterhouse v. Hopkins_, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

Conversely, where the plaintiff has established a _prima facie_ case of discrimination through indirect evidence a burden of production shifts to the employer "to articulate some legitimate, non-discriminatory reason for the employee's rejection." _McDonnell Douglas Corp._, 411 U.S. at 802.   If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were merely pretexts for discrimination.   _Id._ at 804; _Wall_, 946 F.2d at 809; _Perryman v. Johnson Products Co._, 698 F.2d 1138, 1142 (11th Cir. 1983). If the trier of fact rejects defendant's proffered reason as incredible, this rejection, coupled with the elements of

22

plaintiff's prima facie case, may alone support a finding of pretext. St. Mary's Honor Center v. Hicks, _____ U.S. _____, 113 S.Ct. 2742, 125 L.Ed.2d 407, 61 U.S.L.W. 4782, 4784 (1993).

The undersigned first notes that plaintiff has failed to submit any admissible evidence into the record tending to support his claim of discrimination or tending to discredit the affidavit testimony offered by defendant in support of its motion for summary judgment. Instead, plaintiff's deposition testimony is littered with admissions that he has little if any actual knowledge regarding the alleged disparities which existed between him and other supposedly similarly situated white professional wrestlers. (Deposition of Robert Lee Ross, Jr., hereinafter Ross Dep., pp. 118, 120, 124, 125-26). Plaintiff admits that no direct evidence of discrimination exists. (Ross Dep., p. 150). Additionally, the undisputed affidavit testimony offered by defendant is clearly contrary to plaintiff's vague allegations of disparate treatment. Specifically, this testimony indicates that defendant employed approximately 334 male wrestlers during the time that plaintiff wrestled with the WCW. Of this number, approximately 300 were white. Significantly, 278 individuals (the vast majority of them white) earned less compensation

23

than plaintiff. (Affidavit of Eric Holman, hereinafter Holman Aff., ¶¶ 5 and 6).

As noted above, this testimony is not refuted by plaintiff. Instead, plaintiff's untimely response to defendant's motion for summary judgment is entirely devoted to the argument that plaintiff is entitled to proceed to trial on his claims pursuant to 42 U.S.C. § 1981 as well as his pendant state claims. Significantly, none of these claims were raised by plaintiff in his complaint nor referred to in his answer to mandatory interrogatories. Instead, these phantom allegations appear for the first time in plaintiff's untimely response. In sum, the only evidence arguably offered by plaintiff in contradiction to defendant's affidavit testimony are his conclusory allegations during the course of his deposition that defendant engaged in discrimination against black professional wrestlers. The record is devoid, however, of any admissible evidence tending to establish that similarly situated white wrestlers were given favorable treatment.

Assuming arguendo, however, that plaintiff had established sufficient probative evidence of discrimination to raise a material question of fact as to each element of his prima facie case, defendant has clearly discharged its duty to articulate a legitimate, non-discriminatory reason for its

24

actions.  In short, the undisputed testimony establishes that Runnels and Herd jointly made the decision not to renew plaintiff's independent contractor agreement based upon his lack of wrestling skill, professional growth, popularity, and gate appeal.  (Affidavit of James Herd, hereinafter Herd Aff., ¶ 6; Affidavit of Virgil Runnels, hereinafter Runnels Aff., ¶¶ 6-7).

The undersigned is aware of the recent precedent of this circuit that summary judgment is generally inappropriate in Title VII cases where a plaintiff has established sufficient evidence of each element of his prima facie case.  Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993).  The entry of summary judgment in favor of defendant is still appropriate, however, "when evidence of discriminatory intent is totally lacking."  Hairston, 9 F.3d at 921.  In the present case, plaintiff has failed to present one shred of admissible evidence which would tend to establish that defendant's proffered legitimate, non-discriminatory reason was pretextual, or to otherwise establish discriminatory intent on the part of defendant.  In view of this fact, defendant is entitled to summary judgment in its favor even in light of the demanding standards set forth in Hairston, supra.

25

Based upon the above facts, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED.

IT IS SO ORDERED, REPORTED AND RECOMMENDED, this _17th_ day of May, 1994.

_William L. Harper_

WILLIAM L. HARPER

UNITED STATES MAGISTRATE JUDGE

MAY 19 1994

26